UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

AISHA MERCADO RODRIGUEZ,

    Plaintiff

v.                                                                          Civ. No. 98-1347 (PG)

SERVICIOS CORRECCIONALES DE PUERTO
RICO d/b/a "SCPR",

    Defendant

## OPINION & ORDER

Plaintiff Aisha Mercado Rodríguez brought suit against Servicios Correccionales de Puerto Rico ("SCPR") under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act of 1973 ("RHA"), 29 U.S.C. §§ 701 *et seq.*, and Puerto Rico's Law 100, P.R. LAWS ANN. tit. 29, § 146 *et seq.* (1991). Pending before this Court is Defendant's motion for summary judgment. (Dkt. 25) Plaintiff filed a response opposing Plaintiff's motion. (Dkt. 32)

However, despite filing a response, Plaintiff failed to filed a statement of uncontested facts, as required under Local Rule 311.12. This failure to comply results in admission of Defendant's list of uncontroverted facts. *See Tavarez v. Champion Prods., Inc.*, 903 F. Supp. 268, 270 (D.P.R. 1995). The burden on Plaintiff to comply with the rules was not an onerous burden. Procedural rules ensure the fairness and orderliness that courts require to function efficiently and smoothly. While admission of Defendant's uncontroverted facts is not an automatic defeat, it sets a poor tone for Plaintiff's case. A plaintiff who is unable to follow straightforward, simple rules is straddling the bounds of professionalism and endangers his or her case. A two-minute perusing of the local rules would have prevented Plaintiff from making this mistake.



98-1347 (PG)                                                                    2

Unfortunately, the briefs filed by both parties leave much to be desired. For purposes of the summary judgment motions, and after reading the briefs and uncontested statement of facts presented by Defendant, the Court will sift through the document to summarize the facts.

## FACTS

SCPR is a private prison operator in the Commonwealth of Puerto Rico. SCPR is part of the Corrections Corporation of America ("CCA"). In addition to Puerto Rico, CCA has contracts to operate prison facilities in the United States, Australia, and the United Kingdom. SCPR began operations at the Ponce Young Adult Facilities ("Facility") in 1997. The Facility has the capacity to serve 500 inmates. In order to be prepared for the opening of the Facility in 1997, recruitment of personnel began in late 1996. SCPR placed an advertisement in the newspaper soliciting employees for positions at the Facility, including the position of Social Penal Supervisor. Plaintiff applied for and was subsequently hired for the position of Social Penal Supervisor at SCPR in early 1997. Though the application for employment contained specific provisions which allowed a candidate to qualify himself or herself as having a disability, Plaintiff did not qualify herself with having any disability.

SCPR executed the employment contract on January 3, 1997. The contract established a probationary period of six months (from January 7, 1997 to April 7, 1997) and delineated the terms and conditions of her employment. Plaintiff stated in her deposition that she was aware of these duties and responsibilities.[1] The probationary period was later extended 90 days for 405 employees (including

---

[1] The duties of a Social Penal Supervisor were as follows: (1) to verify that all unit officers are at their assigned posts; (2) to verify that every officer has signed his entrance and exit from the assigned shift; (3) the first shift shall be responsible for conducting an inspection of hygiene in all unit modules every Monday; (4) to verify that all cells are in good condition, including beds made, walls with no writing on them, no pictures on walls and clean ceilings. A report is to be given to the Unit Manager after completion; (5) to verify and certify the conditions of a cell prior to its being assigned to a prisoner; (6) to accompany the prisoner when he is verifying the conditions in the cell given to him, to make sure the prisoner signs the cell verification sheet and to deliver a copy to the prisoner and Unit Manager; (6) to deliver to the prisoner

AO 72A
(Rev.8/82)

98-1347 (PG) 3

Plaintiff) on February 28, 1997.[2] On the same date that the probation period contract was executed, Plaintiff was also given a confidentiality agreement and a copy of SCPR's norms and policies relating to SCPR's commercial ethics, conduct, harassment and sexual harassment. Plaintiff also attended a series of seminars and was trained regarding SCPR's policies. On January 31, 1997, Plaintiff was certified by SCPR, as she had completed the basic training for a correctional officer.

On January 15, 1997, Victor Omar Vargas Cruz ("Vargas"), an inmate at the Facility, executed a form to acquire phone privileges (the privilege to make and receive calls).[3] Vargas listed Plaintiff as his wife and provided Plaintiff's unlisted home telephone number. Plaintiff asserts that she never gave Vargas her telephone number and that her relationship with Vargas was purely professional. She asserted that she had the opportunity to spend time with him only in passing when she went to visit her cousin, who was confined in the same institution (at that time, Bayamon Correctional Institution 1072 ("Bayamon 1072")). For his part, Vargas testified that he spoke with Plaintiff fifteen (15) times during his incarceration at Bayamon 1072 and that Plaintiff never gave him her personal information. Defendant, reasonably suspicious of the denials by Plaintiff and Vargas, subsequently accused Plaintiff of violating her confidentiality agreement by providing Vargas with her unlisted home telephone number and other personal information.

Several of Plaintiff's coworkers filed negative incident reports which also affected Defendant's

---

the necessary forms for requesting services, e.g., visits, medical, interviews, etc.; (7) to inspect the cell (disinfect and ensure that is clean) when a prisoner vacates a cell for any reason and to file a report attributing to that fact; and (8) to ensure that cleaning equipment is complete.

[2]This pushed the end of the probation period to at or about July 6, 1997.

[3]It seems that Vargas arrived at the Facility on February 7, 1997, some 23 days after executing the phone request. It is unclear why he was able to apply prior to being an inmate at the Facility. The documents and depositions demonstrate that Vargas knew Plaintiff prior to his incarceration at the Facility.

AO 72A
(Rev.8/82)

98-1347 (PG)                                                                                   4

decision not to retain her. Mr. Victor J. Carbone, while working as a Utility Officer, filed an incident report in which he reported that Plaintiff was "sitting on the bed of prisoner Victor Vargas" and that when Carbone called Plaintiff's attention to the impropriety of this behavior Plaintiff "replied she could do whatever she felt like." (April 22, 1997). In his deposition, Vargas denied that such an incident ever occurred. In another incident report filed by coworker Rubén Caraballo, Plaintiff was accused of speaking with several inmates while they were in their underwear, a violation of Facility rules (March 10, 1997). Several weeks later, coworker Heriberto Plaza Collazo filed an incident report accusing Plaintiff of being in a inmate's interviewing area while the inmate was in only his underwear (April 1, 1997). In late May of 1997, Plaintiff was again cited in an incident report filed by Martín J. Alméstica. In this report, Alméstica reported that he had received several complaints from officers that Plaintiff was inside a cell with a prisoner and that she and the prisoner were both sitting on the bed in the cell. The report also states that this was a common occurrence with Plaintiff and she spent a lot of time in a North A area module. Alméstica requested that the situation be investigated because it was affecting the work in other modules. On May 28, 1997, Unit Manager Ms. Wanda Pomales gave Plaintiff a written reprimand for not providing toilet paper and sheets for the beds to the inmates. However, Ms. Pomales made no mention to Plaintiff of the previously-filed incident reports and Plaintiff denies that these incident reports are true.

Plaintiff received training and was aware that in order for an inmate to communicate or have any contact with any member of the SCPR staff, the inmate must be dressed with proper clothing. Defendant contends that it was Plaintiff's failure to abide by these rules and also by the confidentiality agreement (Plaintiff did not advise Defendant of her failure to follow procedures) that caused the decision not to retain Plaintiff as a permanent employee. Plaintiff was subsequently released on June

98-1347 (PG)                                                                                     5

27, 1997, some ten (10) days prior to the termination of her probation period.[4]

Plaintiff's hands and fingers are smaller than normal. Her arms are also shorter than normal and Plaintiff is unable to bend her arms at the elbow level. Plaintiff received treatment as a teenager from Shriners' Hospitals until the age of fourteen, when she stopped visiting Shriners because "there [was] nothing there for [her]." Plaintiff introduced no further evidence that she sought or received treatment since that time. In fact, Plaintiff consistently maintains that she does not consider herself disabled. When Plaintiff filed a complaint before the Labor Department, she never mentioned any kind of discrimination due to a disability. In essence, Plaintiff leads a fairly normal life. Plaintiff has a Bachelor's Degree in Sociology from the University of Puerto Rico. She is bilingual, fluent in both Spanish and English. Plaintiff is a black belt and former instructor in Tae Kwon Do, and a yellow belt in Kung Fu. While working for SCPR, she often was required to lift and carry objects, including small television sets and fans. She never asked for assistance and was always able to perform these duties by herself. To this day, Plaintiff maintains that she is not disabled.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial. *See*

*Serrano-Cruz v. DFI Puerto*

---

[4] Plaintiff alleged that she was the only employee not to receive her uniform. However, Defendant introduced evidence demonstrating that it had ordered the uniforms for her and she had received several, but the rest were on back order.

98-1347 (PG) 6

*Rico, Inc.*, 109 F.3d 23, 25 (1st Cir. 1997); *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841-42 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018 (1994). "[The] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citing FED. R. CIV. P. 56(e)). Plaintiff must offer "'significant probative evidence tending to support the complaint.'" *Id.* at 256 (quoting *First Nat. Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). Bald allegations will not suffice to convince a court that a genuine issue of fact exists.

## DISCUSSION

The Court honors Plaintiff's assertion that she is not disabled and does not analyze discrimination based upon actual disability. Rather, Plaintiff alleged that SCPR perceived her to be disabled within the meaning of ADA and thus discriminated against her based on that perception. Plaintiff also has not put forth any claim that Defendant failed to give her reasonable accommodation and the Court thus does not examine this issue.

Under the facts of this case as they apply to the ADA, the "term 'disability' means, with respect to an individual," being regarded as having a physical or mental impairment that substantially limits one or more of the major life activities of the individual. 42 U.S.C. § 12102(2).

> In encompassing the category of perceived disability, the ADA follows the model adopted in § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794. The Supreme Court interpreted the similar prong of § 504 in *School Board of Nassau County v. Airline*, 480 U.S. 273 . . . (1987). In *Airline*, a case involving tuberculosis, the Court found that, by enacting this branch of the definition of "handicapped individual" under § 504:
>> Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment.

98-1347 (PG) 7

*Id.* at 284-85.

*Lessard v. Osram Sylvania, Inc.*, 175 F.3d 193, 196 (1st Cir. 1999).

The EEOC's regulations identify three ways in which an individual may be regarded as having an impairment that substantially limits a major life activity. First, the employee "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation." 29 C.F.R. § 1630.2(2)(l)(1). Second, the employee "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment." *Id.* at §1630.2(2)(l)(2). Third, the employee "[h]as none of the impairments defined . . . [above] but is treated by a covered entity as having a substantially limiting impairment." *Id.* at § 1630.2(2)(l)(3).

The Supreme Court has also spoken on this issue. In *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 2149 (1999), the Supreme Court stated that there are "two ways in which an individual may fall within" the ADA's definition of "being regarded" as having a disability. The first is if "a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities." *Id.* at 2150. The second way an individual may fall within the definition is if "a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Id.* In both cases, misperceptions about an individual create the disability. The Supreme Court continued, explaining that:

> By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria. An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity. Accordingly, an employer is free to decide the physical characteristics or medical conditions that do not rise to the level of an impairment–such as one's height, build or singing voice–are preferable to others, just as it is free to decide that some limiting, but not substantially limiting,

AO 72A
(Rev.8/82)

98-1347 (PG)                                                                                          8

impairments make individuals less than ideally suited for a job.

*Id.*

"Substantially limits" in relation to working requires that Plaintiff must allege, at a minimum, that she is unable to work in a broad class of jobs. *Id.* at 2151. According to the EEOC guidelines, the term "substantially limited" means that the person is

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(2)(j)(1)(i)-(ii). The EEOC regulations also suggest considering three factors when determining if an individual is substantially limited in a major life activity.[5] The three factors are: (i) the nature an severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(2)(j)(i)-(iii).

Plaintiff has what can be describe as a cosmetic disfigurement. Her hands and fingers are smaller than normal. Her arms are also shorter than normal and Plaintiff is unable to bend her arms at the elbow level. Defendant contends that Plaintiff is not substantially limited in any major life activity and, thus despite her condition, Plaintiff is not "disabled," as that term is defined in the ADA. Defendant points to Plaintiff's own testimony that Plaintiff was able to perform all the tasks required of her, including lifting and carrying objects, including a small television set. Indeed, Plaintiff

---

[5] Major life activities includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *See* 29 C.F.R. § 1630.2(2)(h)(i).

98-1347 (PG) 9

reiterated in her deposition that she "can do anything" and that she does not consider herself disabled. Of course, Plaintiff's subjective belief that she is not disabled, while admirable, is no more determinative than a person believing that he or she *is* disabled. The Court must decide based upon the evidence. To exclude Plaintiff for her personal belief would be to trample upon the very purposes of the ADA. "Even an individual without any impairment can be just as effectively disabled because of the perceptions and reactions of others." 5 JOSEPH G. COOK & JOHN L. SOBIESKI, JR., CIVIL RIGHTS ACTIONS § 22..08[B][1] at 22A-81 (1999). If Plaintiff does not view herself as disabled she should not be punished by a court if society treats her as such. Whether she is disabled or perceived to be disabled is the question; not whether she believes herself to be disabled.

"Under the ADA, not all impairments lead to protection . . . . Only those impairments which substantially limit a major life activity do so." *See Lessard v. Osram Sylvania*, 175 F.3d at 197. To establish a prima facie case of employment discrimination under the ADA, Plaintiff must prove by a preponderance of the evidence that: (1) she was disabled within the meaning of ADA (or perceived to be disabled); (2) she was a qualified individual, i.e. able to preform the essential functions of the position with or without reasonable accommodation; and (3) she was discharged because of her disability. *Ward v. Massachusetts health Research Inst.*, 209 F.3d 29, 33 (1st Cir. 2000) (citing *Criado v. IBM Corp.*, 145 F.3d 437, 441 (1st Cir. 1998); *Jacques v. Clean-Up Group, Inc.*, 96 F.3d 506, 5111 (1st Cir. 1996)). *See also Lessard v. Osram Sylvania*, 175 F.3d at 197; *Feliciano v. Rhode Island*, 160 F.3d 780, 784 (1st Cir. 1998) (citing *Katz v. City Metal Co.*, 87 F.3d 26, 30 (1st Cir. 1996)). The burden of proof on all three prongs is on Plaintiff. *See Lessard v. Osram Sylvania*, 175 F.3d at 197; *Tardie v. Rehabilitation Hosp.*, 168 F.3d 538, 541 (1st Cir. 1999); *Katz*, 87 F.3d at 30.

"The prima facie case establishes that because an individual with a disability is qualified, yet

98-1347 (PG)                                                                                                        10

has suffered an adverse employment action because of that disability, the employer may have engaged in the type of discrimination the ADA is designed to prevent." *EEOC v. Amego, Inc.*, 110 F.3d 135, 142 (1st Cir. 1997). "[A] plaintiff who lacks direct evidence of discrimination," as here, "may proceed by engaging in a three-stage order of proof articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 . . . (1973)." *Dichner v. Liberty Travel*, 141 F.3d 24, 29 (1st Cir. 1998). "Such a showing gives rise to an inference that the employer discriminated due to the [employer's perception of the] plaintiff's disability and place upon the employer the burden of articulating a legitimate, nondiscriminatory reason for the [firing]." *Id.* at 30. (citing *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 153 (1st Cir. 1993)). Defendant has a burden of production only; the burden of persuasion remains with Plaintiff at all times. *See id.* Once Defendant proffers such a reason, the inference of discrimination dissolves and Plaintiff is required to show that the proffered reason is but a pretext for discrimination. *See id.* Under federal law, a "pretext-plus" approach is utilized. Plaintiff is thus required to present proof that "enables a factfinder rationally to conclude that the stated reason behind the adverse employment decision is not a sham intended to cover up the proscribed type of discrimination." *Id.*

     Prior to reaching Defendant's reasons for firing Plaintiff, Plaintiff must satisfy the first two criteria of a prima facie employment discrimination case: her employer perceived her to be disabled and discharged as a result. Plaintiff's prima facie fails upon consideration of the first criteria. Plaintiff is neither disabled nor did Defendant consider her to be disabled. Plaintiff failed to introduce *any* evidence that her employer considered her or perceived her to be disabled: Plaintiff has not alleged any facts which would indicate a causal connection between the discharge (or any other adverse employment action) and her asserted or perceived disability. While Plaintiff alleged that Defendant's

98-1347 (PG)                                                                                               11

reasons for firing her were pretextual, she neglected or was unable to establish her prima facie case. While Vargas' deposition may call into question several of Defendant's accusations and reasons for firing Plaintiff, it becomes irrelevant in light of Plaintiff's inability to provide anything other than bald allegations that her employer perceived her to be disabled. On the contrary, Defendant hired Plaintiff, employed her for six (6) months, did not list her as disabled in any documents, and apparently had no discussions of her potential disability. In short, Plaintiff was treated as if she did not have a disability. That is not to say she was fired with just cause. Rather Plaintiff was not fired because of a perceived disability. And since this is the only question before the Court, the Court therefore must GRANT Defendant's motion for summary judgment and dismiss both the ADA and RHA causes of action with prejudice. And while Plaintiff may have a claim under Puerto Rico law, this Court no longer has the jurisdiction to decide on that claim and dismisses the Puerto Rico law claim without prejudice.

## CONCLUSION

Wherefore, Defendant's motion for summary judgment is **GRANTED** and the cause of action under the ADA and RHA are **DISMISSED WITH PREJUDICE**. Plaintiff's cause of action under Puerto Rico's Law 100 is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 21, 2000.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　JUAN M. PEREZ-GIMENEZ
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　U.S. District Judge

AO 72A
(Rev.8/82)